*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GROSS, de GROOT, and ZIMMERMANN
Appellate Military Judges

———————————————

**UNITED STATES**
*Appellee*

**v.**

**Josue M. CARDOSO**
Lance Corporal (E-3), U. S. Marine Corps
*Appellant*

**No. 202500144**

———————————————

Decided: 9 July 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Douglas C. Hatch

Sentence adjudged 12 September 2024 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 48 months, forfeiture of all pay and allowances, and a dishonorable discharge.[1]

For Appellant:
*Captain Kyle W. Rodewald, USMC*

*For Appellee:*
*Major Mary Claire Finnen, USMC* (argued)
*Lieutenant K. Matthew Parker, JAGC, USN* (on brief)

———————————————

[1] Appellant was credited with 200 days of pretrial confinement credit.

Judge ZIMMERMANN delivered the opinion of the Court, in which Senior Judge GROSS joined. Judge de GROOT filed a separate opinion concurring in the judgment.

_____

**This opinion does not serve as binding precedent but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

ZIMMERMANN, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas, of two specifications of disobeying a superior commissioned officer, two specifications of domestic violence (one by strangulation, one by assault consummated by a battery), and two specifications of obstructing justice, in violation of Articles 90, 128b, and 131b, Uniform Code of Military Justice (UCMJ).[2] The remaining charges and specifications, to which Appellant pleaded not guilty, were withdrawn and dismissed pursuant to a plea agreement.

Appellant asserts a single assignment of error (AOE): "The military judge imposed an inappropriately severe sentence by departing from the sentencing parameters without good cause."[3] We find no prejudicial error and affirm.

## I. BACKGROUND

### A. Underlying Facts

Appellant and his wife lived aboard Marine Corps Base Camp Pendleton, California. Several months before the incident giving rise to the charges, Appellant's battalion commander issued a military protective order (MPO) directing Appellant to have no contact with his wife and remain at least 500 feet away from her. On 25 February 2024, Appellant violated the order by going to the marital home and intentionally remaining on the second floor of the home until his wife returned to the house. At that point, they began to argue. The verbal quarrel escalated when Appellant put his hands around his wife's throat and squeezed, restricting her airway. She attempted to get to a window to call for help, but Appellant pulled her away. The argument continued, and

---

[2] 10 U.S.C. §§ 890, 928b, 931b.

[3] Appellant's Brief at 1. The AOE asserts error only with respect to Charge II, Specification 2.

Appellant hit his wife on her face with his open hand, pulled her hair, and again strangled her by using his hands to impede her breathing. She eventually was able to get to a window, pushed out the screen, and called for help to neighbors she saw from the window. Appellant went outside to speak to the neighbors, and his wife also exited the house. Appellant told one of the neighbors not to call the Provost Marshal's Office. Appellant's wife sat on the ground to avoid leaving with Appellant, but Appellant picked her up and forced her into his vehicle. Before they could leave the installation, military police stopped the car, and Appellant instructed his wife in Spanish not to talk to them, mistakenly believing the arresting officers did not speak Spanish. The military police apprehended Appellant.

From the confinement facility, Appellant continued to call his wife in violation of the MPO. His purpose in contacting her was to convince her to stop cooperating with authorities. These MPO violations were repeated and occurred over the course of several weeks. After Appellant's MPO violations were discovered, the confinement facility restricted Appellant's phone privileges. However, by using a phone designated for attorney consultations, Appellant was able to improperly circumvent these restrictions to continue attempting to persuade his wife to recant her allegations or otherwise stop cooperating with law enforcement.

**B. The Plea Agreement**

Appellant negotiated a plea agreement with the Office of Special Trial Counsel. In exchange for withdrawal and dismissal of several specifications, Appellant agreed to plead guilty to orders violations, domestic violence, and obstruction of justice. The parties agreed on the range of months of confinement that the military judge could sentence Appellant to serve for the offenses to which he pleaded guilty as indicated below, with confinement adjudged for each specification to be served concurrently:

| Charge and Specification | Maximum Authorized by UCMJ | Plea Agreement Range | Sentencing Parameters Range | Adjudged Segmented Sentence to Confinement |
|---|---|---|---|---|
| Chg II, Spec 2 Art. 128b (domestic violence-strangulation) | 96 | 24–48 | Category 2 1–36 | 48 |
| Chg II, Spec 4 Art. 128b (domestic violence-assault) | 42 | 24–42 | Category 1 0–12 | 24 |

| | | | | |
|---|---|---|---|---|
| Chg III, Spec Art. 131b (obstruction of justice) | 60 | 24–48 | Category 2 1–36 | 24 |
| Chg IV, Spec 1 Art. 90 (disobey superior comm. officer) | 60 | 24–48 | Category 2 1–36 | 24 |
| Chg IV, Spec 2 Art. 90 (disobey superior comm. officer) | 60 | 24–48 | Category 2 1–36 | 24 |
| Add. Chg, Spec Art. 131b (obstruction of justice) | 60 | 24–48 | Category 2 1–36 | 30 |

Additionally, the parties agreed that *the evidence supported* a sentence above the parameters range for Charge II, Specification 4 (domestic violence by assault consummated by a battery), and that *the evidence may support* a sentence above the parameters range for Charge II, Specification 2 (domestic violence by strangulation).[4]

Following the providence inquiry, the military judge accepted Appellant's pleas and found him guilty of all charges and specifications to which he entered guilty pleas. During the plea colloquy, the military judge confirmed multiple times that Appellant fully understood the plea agreement and its terms, which included the sentencing range of 24 to 48 months of confinement for Charge II, Specification 2. The military judge also confirmed that Appellant had thoroughly discussed the decision to enter into the plea agreement and its terms with his trial defense counsel, including an explanation of the sentence limitation portion of the agreement. The military judge explicitly discussed the provision of the plea agreement regarding the possibility of an above-parameters sentence for Charge II, Specification 2.[5] After reviewing the plea agreement with Appellant, the military judge accepted it. Consistent with the plea agreement, the military judge sentenced Appellant to 48 months confinement for Charge II, Specification 2, which was within the plea agreement but above the upper range of the applicable sentencing parameter.

---

[4] App. Ex. XLIII at 8.

[5] R. at 301–03.

In accordance with Article 56(c)(2)(B)[6] and Rule for Courts-Martial (R.C.M.) 1002(a)(2)(B), the military judge entered written findings supporting the above-parameters sentence for that specification.[7] He referenced specific characteristics of the strangulation at issue, including the size disparity between Appellant and his wife, the pain and injuries the she suffered, and that it took place in on-base housing and while an MPO was in place.

The military judge did not recommend suspension of any of the adjudged confinement.[8] Further, although the adjudged sentence for two of the specifications of conviction exceeded the upper range of the parameters, the military judge did not reject the plea agreement as plainly unreasonable.[9]

Appellant submitted a clemency letter to the convening authority seeking deferment of the reduction to E-1 and waiver of automatic forfeitures for the benefit of his wife. In the letter, Appellant alleged legal error based on evidence and argument the Government relied upon to support its request for an above-parameters sentence. For example, Appellant argued the Government and military judge relied on evidence of the second phase of the altercation, which was charged as Charge II, Specification 4, to support the sentence on the initial strangulation charged as Charge II, Specification 2. Further, Appellant took issue with trial counsel and the military judge not analyzing the factors listed in Appendix J to the Military Judges' Benchbook regarding parameters.[10]

As a result, the military judge ordered briefing from both parties on the relevant issues and a post-trial hearing. Throughout the written pleadings and at the hearing, all parties agreed the sentence was within the range of the plea

---

[6] 10 U.S.C. § 856(c)(2)(B).

[7] The sentence for Charge II, Specification 4 also exceeds the upper range of the parameters, but the plea agreement documented the parties' agreement that the evidence supported such a sentence, and Appellant does not challenge the sentence adjudged for this specification.

[8] Art. 60a(c)(1), UCMJ; R.C.M. 1009(f)(1)(A).

[9] Art. 53a(b)(1), UCMJ; R.C.M. 1002(a)(3)(A).

[10] Dep't of the Army Pam. 27-9, *Military Judges' Benchbook*, App'x J.

agreement and lawful, and both parties wanted the agreement to remain in effect.

## II. DISCUSSION

### A. Standard of Review

The parties disagree on the applicable standard of review. Appellant argues we should review sentence appropriateness de novo, and the Government argues for a "sliding scale" standard of review.

For decades, Courts of Criminal Appeals (CCAs) reviewed sentence appropriateness de novo.[11] The Court of Appeals for the Armed Forces (CAAF) "described the service courts' authority to conduct sentence appropriateness as an awesome, plenary, de novo power of review."[12] The previous version of the statute governing appellate review stated the CCA "may affirm only . . . the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[13]

Congress passed the National Defense Authorization Act for Fiscal Year 2022,[14] which replaced this provision with new language describing the service courts' authority to review sentence appropriateness."[15] The revised Article 66(e)(1) states a CCA may review a sentence to determine, *inter alia*:

(B) whether the sentence is inappropriately severe—

(i) if the sentence is for an offense for which the President has not established a sentencing parameter pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022; or

(ii) in the case of an offense for which the President has established a sentencing parameter pursuant to section 539E(e) of the National Defense

---

[11] *See, e.g., United States v. Avellaneda*, 84 M.J. 656, 661 (N-M. Ct. Crim. App.), *review denied*, 85 M.J. 113 (C.A.A.F. 2024) (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)).

[12] *United States v. Arroyo*, 86 M.J. 89, 93 (C.A.A.F. 2025) (quoting *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (internal quotes and additional citations omitted)).

[13] *Id.* at 92–93 (quoting Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2018); *United States v. Kelly*, 77 M.J. at 406).

[14] Pub. L. No. 117-81, § 539E(d), 135 Stat. 1541, 1703 (2021).

[15] *Arroyo*, 86 M.J. at 93 n.4.

Authorization Act for Fiscal Year 2022, if the sentence is above the upper range of such sentencing parameter[.]

In *Arroyo*, the CAAF did not opine as to "whether or how [the amendments] might affect this Court's sentence-appropriateness review jurisprudence."[16] The CAAF has not addressed this matter further, and the statute is silent as to the specific standard of review, despite the new requirement for military judges to enter factual findings into the record when they adjudge an above-parameters sentence. Based on our review of the entire record, our resolution of Appellant's assignment of error would not change under any standard of review. We therefore leave for another day the question of what standard applies.[17] Applying the most advantageous standard for Appellant, which is de novo, Appellant is not entitled to relief.

## B. Limits on Sentencing

### 1. Statutory and Regulatory Maximum Punishments

Each punitive article of the UCMJ at issue in this case provides that an accused, upon conviction, shall be punished as a court-martial may direct.[18] The *Manual for Courts-Martial* provides specific maximum sentences to confinement a court-martial may adjudge.[19]

Additionally, Article 56(c), UCMJ, provides "a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces," considering enumerated factors.[20] Those include:

> (A) the nature and circumstances of the offense and the history
> and characteristics of the accused;
> (B) the impact of the offense on—

---

[16] *Id.*

[17] We note that when civilian federal courts of appeals review sentences under similar circumstances, Congress directed review of the trial judge's factual findings for clear error and a de novo review of the application of the U.S. Sentencing Guidelines to those facts. 18 U.S.C. § 3742(e)(3)(C). Also, we presume Congress was aware of well-established case law holding a CCA reviews sentence appropriateness de novo when it amended Article 66, UCMJ, yet the amendment does not explicitly dictate a different standard of review. *See* Antonin Scalia & Bryan A. Garner, *Presumption Against Change in Common Law*, READING LAW (2012), at 318.

[18] Articles 90, 128b, 131b, UCMJ.

[19] *Manual for Courts-Martial, United States* (2019 ed.) (MCM) pt. IV, para. 16d, 78d, 83d at IV-24, IV-123, IV-129.

[20] R.C.M. 1002(c)(2) incorporates the same factors military judges should consider when arriving at an appropriate sentence.

(i) the financial, social, psychological, or medical wellbeing of any victim of the offense; and

(ii) the mission, discipline, or efficiency of the command of the accused and any victim of the offense;

(C) the need for the sentence—

(i) to reflect the seriousness of the offense;

(ii) to promote respect for the law;

(iii) to provide just punishment for the offense;

(iv) to promote adequate deterrence of misconduct;

(v) to protect others from further crimes by the accused;

(vi) to rehabilitate the accused; and

(vii) to provide, in appropriate cases, the opportunity for retraining and return to duty to meet the needs of the service;

(D) the sentences available under this chapter; and

(E) the applicable sentencing parameters or sentencing criteria

. . .

R.C.M. 1002(d) explicitly authorizes the military judge to consider all evidence admitted during the findings and punishment phases of the court-martial in arriving at a sentence determination.

### 2. *Parameters*

Appellant's offenses occurred after the effective date of changes to the UCMJ implementing new sentencing procedures, including the establishment of sentencing parameters. These parameters set forth ranges of confinement for specified offenses based on the category of the charged offense. Article 56, UCMJ, now requires that a military judge sentence an accused to confinement within the range of established parameters.[21] Military judges may deviate from the parameters but must include a written explanation containing the factual basis supporting an above-parameters sentence.[22]

### 3. *Plea Agreements*

Appellant's offenses also occurred after the effective date of changes to the UCMJ requiring military judges to sentence convicted servicemembers "in accordance with the limits established by the plea agreement" if the military judge has accepted the plea agreement.[23] The statute provides an exception to this rule, allowing the military judge to reject the plea if the plea agreement

---

[21] Article 56(c)(2)(A); R.C.M. 1002(a)(2)(B).

[22] Article 56(c)(2)(B); R.C.M. 1002(a)(2)(B).

[23] Article 53a(e); *see also* R.C.M. 910(f)(5).

"proposes a sentence that is outside the sentencing parameter if the military judge determines that the proposed sentence is plainly unreasonable."[24]

## C. The Sentence is Not Inappropriately Severe

Appellant challenges as inappropriately severe only one segment of the sentence the military judge adjudged: the confinement for 48 months with respect to Charge II, Specification 2. Appellant argues the military judge failed to provide an adequate factual basis to support such a sentence and therefore, it is inappropriately severe. The sentencing parameter for this specification establishes as a baseline a range of 1–36 months. However, the parties agreed on a range of 12–48 months for this specification in the plea agreement, understanding the military judge could find the evidence supported a sentence above the parameters.

To determine whether a sentence is inappropriately severe, we must make an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[25] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[26] In making this assessment, we analyze the record as a whole.

While we are not bound by the military judge's factual findings, we recognize that he heard the only witness called to testify at sentencing, Appellant's mother, and he was able to observe and assess Appellant's demeanor during his unsworn statement and providence inquiry. With respect to the numerous written exhibits the parties offered and the military judge admitted as evidence, we are able to conduct our own independent review of this evidence in order to evaluate the appropriateness of the sentence. We also consider the terms of the plea agreement in the context of the sentence appropriateness determination.[27] Finally, we are mindful that our review does not involve a decision whether to grant clemency.[28]

The crimes to which Appellant pleaded guilty were extremely serious as a whole. Further, the domestic violence by strangulation alleged in Charge II,

---

[24] Art. 53a(b)(1); R.C.M. 1002(a)(3)(A).

[25] *Avellaneda*, 84 M.J. at 661 (quoting *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)).

[26] *Id.* (quoting *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988)).

[27] *See United States v. Spencer*, ___ M.J. ___, No. 25-0192, 2026 CAAF LEXIS 143, at *6 (C.A.A.F. Feb. 9, 2026) ("A CCA, therefore, must take a plea agreement into account in performing its sentence appropriateness review").

[28] *Avellaneda*, 84 M.J. at 661–62 (citing *Healy*, 26 M.J. at 395).

Specification 2 is, on its own, worthy of significant punishment.[29] Appellant admitted to putting his hands around his wife's neck and squeezing with a pressure of "seven or eight" on a scale of one to ten, "ten being the most pressure," for six to eight seconds.[30] During this encounter Appellant "slammed" his wife against a wall causing her to fall to the ground, then kicked her in the abdomen and knees.[31] During the second strangulation, Appellant stated, "Look at my eyes because these are the last eyes you'll ever see, b***h."[32] At that time, Appellant's wife saw Appellant grab a pillow, and she believed he was going to kill her with it. Appellant's wife, who was substantially lighter than Appellant, sustained visible injuries from this attack, and her shirt was ripped in the process. It is highly relevant that at the time of this event, Appellant was prohibited by a lawful order from being within 500 feet of or communicating with his wife for her protection. As the military judge found, these assaults took place in military housing, and other residents became involved. Appellant went to great lengths to obstruct an investigation that was sure to ensue and avoid the consequences of his actions, both immediately after the assaultive conduct and continuing for weeks, even after he was confined. He forced his wife into a vehicle and drove away so they would not be found together at the home, instructed her not to talk to the military police, and made false statements at the brig in order to continue contacting his wife in an effort to persuade her to stop cooperating with law enforcement.[33]

Appellant took responsibility for his crimes by pleading guilty to the offenses for which he was convicted rather than contesting them at trial. His willingness to take responsibility through his guilty pleas weighs in his favor. However, even in conjunction with the other evidence of extenuation and mitigation Appellant offered and we considered, it does not convince us that the sentence is inappropriately severe.

Appellant took issue with the military judge's omission of the factors listed in Appendix J of the Military Judges' Benchbook. However, that reference is not binding, but rather provides guidance. Appellant had the advice of

---

[29] *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024).

[30] R. at 201.

[31] Pros. Ex. 14 at 1. Appellant did not object to this evidence.

[32] Pros. Ex. 14 at 2.

[33] Appellant characterizes the military judge's consideration of these factors as improper double punishment for the same offense since this conduct formed the basis of other specifications of which Appellant was convicted. We find this evidence proper aggravation under R.C.M. 1001(b)(4) as matters "directly relating to or resulting from" the domestic violence by strangulation.

competent counsel, knowingly and voluntarily entered into a plea agreement providing for the possibility of the sentence he received and repeatedly informed the military judge he wanted the agreement to remain in effect. Viewing the entire record in light of the factors listed in Article 56, UCMJ, and R.C.M. 1002, the adjudged sentence above the parameters—but within the terms of the plea agreement—was not inappropriately severe.

We have carefully considered Appellant's personal history and characteristics, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial.[34] We conclude that Appellant's sentence as a whole, and in particular, to 48 months of confinement for Charge II, Specification 2, is not inappropriately severe.

### III. CONCLUSION

After careful consideration of the record, and the briefs and oral argument of appellate counsel, we have determined that the findings and sentence are correct in law and that no error materially prejudicial to Appellant's substantial rights occurred. The sentence is appropriate.

The findings and sentence are **AFFIRMED**.

---

[34] *See Spencer*, ___ M.J. ___, 2026 CAAF LEXIS 143, at *6 (a CCA must consider "the entire record" in performing its sentence appropriateness review).

de GROOT, Judge (concurring in the judgment):

While I concur with the majority opinion in the affirmance of the sentence, the majority leaves for another day what the appropriate standard of review should be. In my opinion, another day is today. In accordance with the language in the new Article 66, UCMJ, for sentences that may be considered inappropriately severe, specifically in cases where the sentence is above the upper limit of an established sentencing parameter, the standard of review should be abuse of discretion.

Under the version of Article 66 from which much of our case law has been derived, a Court of Criminal Appeals (CCA) could affirm "the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, the Court may weigh the evidence, judge the credibility of witness, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."[35] When the statute was amended, the portion quoted above was removed. The current Article 66 tells the CCA that it may consider:

(A) whether the sentence violates the law;

(B) whether the sentence is inappropriately severe—

(i) if the sentence is for an offense for which the President has not established a sentencing parameter pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022; or

(ii) in the case of an offense for which the president has established a sentencing parameter pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022, if the sentence is above the upper range of such sentencing parameter;

(C) in the case of a sentence for an offense for which the President has established a sentencing parameter pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022, whether the sentence is a result of an incorrect application of the parameter;

(D) whether the sentence is plainly unreasonable; and

(E) in review of a sentence to death or to life in prison without eligibility for parole determined by the members in a capital case under section 853(c) of this title (Article 53(c)), whether the

---

[35] Article 66(d)(1), UCMJ (2019), 10 U.S.C. § 866(d)(1).

sentence is otherwise appropriate, under rules prescribed by the President.[36]

Article 66(e)(2) goes on to tell the CCA that:

[i]n an appeal under this subsection. . .the record on appeal shall consist of –

(A) any portion of the record in the case that is designated as pertinent by any party;

(B) the information submitted during the sentencing proceeding; and

(C) any information required by rule or order of the Court of Criminal Appeals.[37]

This is a much narrower consideration than what was previously afforded the CCAs.

Under the prior Article 66, in *United States v. Kelly*, the Court of Appeals for the Armed Forces (CAAF) held that Article 56(b), UCMJ,[38] did not restrict the Army Court of Criminal Appeals from its ability to review a mandatory minimum sentence for sentence appropriateness.[39] The CAAF pointed out that while Article 56(b) and Article 66(c)[40] seemed to be at odds, they were not, as Article 56(b) was simply a limit on the court-martial and not the reviewing authorities.[41] Congress provided the CCA with "awesome, plenary, de novo power of review,"[42] and while it imposed limits on the convening authority's power, Congress was aware of the law and chose not to constrain the power of the CCA.[43] Congress has done so now under the current Article 66. The record on appeal when considering the sentence does not necessarily include the entire record of trial, nor does it explicitly state anymore that the CCA may

---

[36] Article 66(e)(1), UCMJ.

[37] Article 66(e)(2), UCMJ.

[38] Article 56(b), UCMJ, 10 U.S.C. § 856(b) (2012 & Supp. I 2014) provided for mandatory sentence minimums for specific offenses, specifically a dismissal or dishonorable discharge as applicable.

[39] 77 M.J. 404, 405 (C.A.A.F. 2018).

[40] Article 66(c), UCMJ (2012).

[41] *Kelly,* 77 M.J. at 407.

[42] *Id.* (citations omitted)

[43] *Id.*

affirm only the sentence or the part of the sentence as the Court determines should be approved.[44]

While the CCAs review power has been truncated, the military judge is now required to do more should a sentence be outside the sentencing parameters. Article 56(c) states that "[i]n sentencing an accused under [article 53], a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces…" The statute goes on to list a number of considerations for the court-martial.[45] Article 53a(b) states:

> [s]ubject to subsection (c), the military judge of a general or special court-martial shall accept a plea agreement submitted by the parties, except that— (1) in the case of an offense with a sentencing parameter set forth in regulations prescribed by the President pursuant to section 539E(e) of the National Defense Authorization Act for Fiscal Year 2022, the military judge may reject a plea agreement that proposes a sentence that is outside the sentencing parameter if the military judge determines that the proposed sentence is plainly unreasonable. . .[46]

The current statute requires military judges to make determinations, which they were not previously required to do, prior to accepting a plea agreement.

In addition to making a finding as to whether a plea agreement that proposes a sentence above the sentencing parameters is plainly unreasonable, the military judge, if he or she imposes a sentence outside a sentencing parameter, "shall include in the record a written statement of the factual basis for the sentence."[47]

Appellant argues that the standard of review should be de novo in accordance with the decades of case law that has used the prior Article 66 language to justify the greater standard of review. In light of all the changes to Article 66, a de novo standard of review is no longer justified.

---

[44] Under the previous Article 66, a CCA had "discretion to approve only that part of a sentence that it finds 'should be approved,' even if the sentence is correct as a matter of law." *United States v. Arroyo*, 86 M.J. 89, 92–93 (C.A.A.F. 2025) (citations omitted).

[45] *See* Article 56(c)(1), UCMJ.

[46] *See also* Rule for Courts-Martial (R.C.M.) 1002(b)(2) (2024). The current statute also states the military judge may reject a plea agreement where the sentence is not subject to parameters if the military judge finds it to be plainly unreasonable. Article 53a(b)(2), UCMJ, 10 U.S.C. § 853a(b)(2) (2024).

[47] Article 56(c)(2)(B), UCMJ; R.C.M. 1002(2)(B).

When a military judge makes findings of fact, the standard of review has historically been abuse of discretion. "'Abuse of discretion' is a term of art applied to appellate review of the discretionary judgments of a trial court. An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law."[48] "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."[49] As the military judge is required to make findings of fact in cases where he or she is sentencing an accused above the sentencing parameters, we should review the military judge's findings using the abuse of discretion standard.

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable' or 'clearly erroneous.'"[50] Under an abuse of discretion standard of review, Appellant's sentence is not inappropriately severe. Even under a de novo standard of review, I agree with the majority opinion that the Appellant's sentence is not inappropriately severe and therefore concur in the judgment.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[48] *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

[49] *United States v. Gore*, 60 M.J. 178,187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

[50] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)).